The beginning of The Battle of New Bethesda May it please the Court, Charles Word on behalf of Luce Forward. This begins with Luce's appeal from an injunction based entirely on Duffield Panel's reading of Title VII as amended. That judgment should be reversed with directions and Duffield should be overruled for four reasons. First, decisions of the United States Supreme Court require it. Second, an en banc court should avoid an unnecessary inter-circuit conflict. Third, the EEOC itself has conceded that the panel decision correctly conformed Ninth Circuit law to United States Supreme Court precedent and that neither Section 118 nor its 1997 notice makes condition of employment arbitration agreements unenforceable or illegal. And fourth, Duffield was wrong when it was issued and time has only emphasized that point. I would start with the United States Supreme Court decisions and of course that begins with Circuit City. In its holding and in overruling this circuit's decision in Kraft, the United States Supreme Court held that the Federal Arbitration Act applies to non-transportation employment contracts nationwide. That squarely pits the Federal Arbitration Act and its policies against all other federal statutes and related policies that may conflict with the FAA. Duffield Part 2A gives lip service to the United States Supreme Court's decision in Gilmer, but then it also views the United States Supreme Court as elevating anti-discrimination law above other federal regulatory and remedial statutes. Circuit City refutes that. Duffield Point Part 2B, particularly the text and footnote 6 at the beginning, begins by deferring to the EEOC's amicus brief and its 1997 notice to the extent that the Court found the 1997 notices analysis persuasive. Well, in sum, the Duffield legislative history analysis is a recitation of the EEOC's 1997 notice. Counsel, I have a question arising from the 1997 policy statement that's particular to the individual complainant, and that is whether he might be entitled to prevail individually even if this Court were to decide that Duffield was incorrect on a theory that he was opposing a practice that he believed at the time, reasonably believed at the time, was unlawful. What is your response to that? Judge Graber, that goes to the retaliation theory. When you frame it in the context of whether this individual could prevail, please remember that this individual sued Loose Forward in State court, that that went to final judgment, that one of the grounds for Loose Forward's motion for summary judgment in the district court was that the EEOC could recover no victim-specific relief because of the bar of res judicata and the bar of collateral estoppel, that the district court granted Loose Forward's motion for summary judgment on that ground as to any victim-specific relief or monetary relief and that nobody has appealed from that. Thank you, Your Honor. Was retaliation one of the theories that was litigated in State court? That was a subject of dispute in the motion for summary judgment. There's no question that the word retaliation was used. The EEOC contended that retaliation under State law means something different from retaliation under federal law. But most importantly, after the district court granted summary judgment for Loose Forward on that ground, the EEOC has never taken up any individual or victim-specific relief again. So our view is simply that it's off the table. We have an appeal from an injunction. We have a cross appeal that says the injunction should have been different or broader or could be sustained on a different ground. But there is nothing in this case that has ever said, after the district court's summary judgment, that the individual could prevail or any victim-specific relief could be afforded. Judge Fletcher, you look like you want to ask a question. I'm not sure why that takes the theory of retaliation entirely off the table, because obviously we have the validity of the injunction directly in front of us. I agree that retaliation on the validity of the cross appeal and the validity of the injunction is on the table. So retaliation, then, is in front of us. It is in front of you, Your Honor, to the extent that the EEOC has cross appealed and is asserting that the injunction should have been different or broader or could be sustained on an alternative ground. But it is not on the table with respect to anything that Donald Ligatre could recover or to victim-specific relief that the EEOC could seek on his behalf. Did the district court explicitly reach the retaliation theory? The district court did not reach the retaliation theory because it found itself bound by death penalty. So even if it were viable in the abstract, should it be remanded for the district court or should we go ahead and deal with it if we reached the issue? If you reached the issue, Your Honor, first, I believe that the panel got it exactly right. And there is no basis for remand. The decision of the court should be to reverse and give the district court directions to enter judgment in favor of Liz Forward. If, however, the court were to disagree on that point and find something viable in a retaliation theory, our view is that at a minimum there were triable issues of fact on questions like whether Mr. Ligatre even presented a subjective statement that amounted to a reasonable or that could support a reasonable belief that he was engaged in projected opposition conduct. Our position is very clearly that if the court agrees with the EEOC in any respect, except if it reaffirms Duffield and the injunction on the ground given, we would have to go back to the district court. But even if we were to agree with you on Duffield, that wouldn't necessarily resolve the reasonable belief aspect of the retaliation claim, which you now suggest might have factual issues. Is that correct? I believe if you agree with me on Duffield, that ends the retaliation claim. Please remember that Mr. Ligatre applied for employment at Liz Forward in September of 1997. Duffield was argued in March of 1998 and decided in May of 1998. Counsel, that's exactly why I asked you about the EEOC policy statement, because it seems to me that it's plausible that an individual who had a question whether his idea was correct legally about what Title VII provides might logically turn to what the EEOC thought. So how does the timing between the EEOC statement and 1997 relate to what I'm thinking? The EEOC statement in 1997 was published two months before the September application for, I believe it's July, so that's about two months. So if he had done any research, he would have come up with that. If, I don't know if he did. If he had done any research, he might have come up with that. And that gets to his subjective statement, I think arbitration is unfair. His unarticulated reason for that, which he spoke to in deposition, I wanted to keep my civil rights. Don't go ñ neither of those statements go to anything about what the EEOC had written. And I also think it's very important to remember that the EEOC's ñ So are you saying that reasonable reliance depends on which cases the individual has read? The objective part of reasonable reliance does not. What I'm saying here is this record doesn't even support subjective reliance. It doesn't support that even in a subjective way, Mr. Lagutry asserted Title VII or any other anti-discrimination law as a basis for not wanting to sign the arbitration agreement. That can't be right, meaning you don't require somebody to have a subjective belief that incorporates legal statements. No, but I would expect an individual who's asserting that reasonable ñ the reasonable grounds basis to say something more than I think arbitration is unfair. I think arbitration ñ He has to tell the lawyers who are firing him the law? No, I do not think he has to tell the lawyers who are firing him the law. But arbitration is unfair doesn't even say I think your policy is unfair. It's a complaint about arbitration. It's a complaint about arbitration by a person who initially told Mr. Berry that he was going to sign this agreement, basically who never articulated any belief that the law was on his side, never gave the employer any notice whatever that he believed that he was engaging in some kind of opposition that was somehow protected by law. So if he had said, I refuse to sign this because I don't think I have a legal obligation, that would fix the situation? I think that's getting there. I think something that asserts at least some minimal subjective belief that the employer is engaged in some kind of unlawful practice. Mr. Byrd, you started ñ I don't want to change the subject at all, but you started out by saying this en banc court should overrule Duffield, right? I think that's where you started. Do you mean that we should just because we're an en banc court and we're free to do so as a matter of policy or because we're required to do so by Circuit City? My position is both when we started talking about Let's start with Circuit City. Tell me why we have Circuit City compulsive. When we started into retaliation, I was explaining that the holdings of Circuit City refute Duffield. From those holdings, I go to the point that an en banc court or a panelist as the initial panel has to reexamine Duffield in the light of what the United States Supreme Court has said about arbitration in the employment context. It said in Circuit City that employees get real benefits in terms of expeditious decisions and reduced costs from arbitration. It said explicitly that the supposition that somehow the benefits of arbitration disappear when one gets into the employment context is not a true supposition and does not reflect the law of the United States Supreme Court. It reiterated that it had been quite specific that arbitration agreements can be enforced under the Federal Arbitration Act without contravening the policies of anti-discrimination law. And it said that in arbitration of a statutory claim, as it had said in many other cases, a person does not give up any substantive rights under any federal statute but merely engages in forum selection. My view is that in light of those four statements and the fact that the holding of certain states... I didn't hear any statement about an employee who doesn't think there's such a great benefit may be compelled by a mandatory provision as a condition of employment. Did they say anything about that? You won't find any language to that effect in the decisions. I didn't think so. You will, however, find that these decisions from the United States Supreme Court, Gilmer, Circuit City, and so on, all involve situations where the employee had no choice but to sign the arbitration agreement or not have a job. And that's even true in Waffle House where the employee had to agree to arbitration in the application for employment. It wasn't even in Waffle House. It's not even delayed until you sign an employment agreement. You agree to arbitration when you apply. In light of those four statements... And what about the statement that the Supreme Court made in Wright that even though it's not a substantive right, the right to the forum is an important right? That statement doesn't say that condition of employment arbitration agreements are inappropriate, are illegal, are prohibited. It doesn't even say they're not enforceable. No, no, but once we say it's not a substantive right, which you said, that doesn't mean that it's not an important right because the Supreme Court said in Wright that it is an important right even though it's not substantive. If it's not substantive, Your Honor, that means that a person can waive it. If a person can waive it, that means that condition of employment arbitration agreements can't be criticized. And the United States, to go back to the four statements that are exactly on point in Circuit City, each one of them reaffirms that arbitration is appropriate. Circuit City didn't consider, I guess, like Duffield did, you know, the impact of the 1991 Civil Rights Amendment, right? It has on this issue? It did not specifically discuss Section 118. In any event, I go back to you. In light of those four statements of the United States Supreme Court, in light of reaffirming them in Waffle House, Duffield simply cannot stand against the United States. I'm trying to work on this retaliation theory and get my hands on it. I guess I'll hear from the other side on it as well. But obviously, absent the arbitration agreement, any employee has a right to invoke judicial protection under Title VII. If an employee says, that's what I would like to do, and the employer says, well, if you're going to do that and not sign this arbitration agreement waiving the right you otherwise have a right to do, I'm going to fire you. Why is that not retaliation? Your Honor, your question embeds some issues of time that I think are important to look at. As phrased, I hear the question almost as putting this issue. If the employee thinks there has been a violation, a substantive violation, and says, I'm going to go to the EEOC, I'm going to file a lawsuit, I'm going to do whatever, and then the employer says, you can't file a lawsuit against me, I demand you arbitrate, otherwise I'll fire you, then the employer's conduct in changing the forum is in response to the employee's notice that the employee intends to go to the EEOC, either have the EEOC pursue relief or get a right to sue letter. And I would agree that would be retaliation. And why is it different if the employee says, you haven't violated my rights yet, but if you do, I'm going to court, and the employer in response says, well, in that case, if that's what you want to do, you're going to have to sign this arbitration agreement. If you don't, I'm going to fire you. The if is everything. It's very difficult to Why is the if everything? Because without there being a preexisting violation, or at least the employee's reasonable and good faith belief that there was one. Does that mean if the employer has a bad record, the employer is not protected under your theory, that I'm going to work for X, Y, Z, megalith, terrible corporation, I have a real suspicion that you're going to behave badly, then your analysis won't work? No, because the suspicion that an employer is going to be why does the employee want the job? But this is the suspicion that the employee in a lot of circumstances why they want the job, that the suspicion that the employer is going to behave badly does not give an employee a reasonable and good faith belief that the employee has any reason to file a claim to pursue any remedy, whatever. But it's not. In other words, your theory is it's not retaliation. When someone announces an intent to file suit on the hypothetical situation that he might eventually have ground. But it is retaliation when there is ground pursued and he announces that. Yes. That's where you would draw the line. Yes. Okay. As long as the employee is presenting a true hypothetical, if you ever discriminate against me, I want to sue, then the employee cannot have a reasonable good faith belief that the employer's universal policy that everyone will sign an arbitration agreement as a condition of employment is a retaliation for anything the employee has done. I'd like to return to Duffield again and start with why Duffield was wrong when issued and time has confirmed that. The starting point of Duffield's error is that it fails to take into account what the plain language of Section 118 is. Section 118 encourages seven kinds of alternative dispute resolution. It's often elipsed because the controversial one is arbitration. But it goes through settlement conferences, mediations, mini-trials, all sorts of things, and it says these are encouraged. I think the Third Circuit in Seuss had the perfect word for what Section 118 is. The Third Circuit used the word portatory. Congress was saying, we hope you'll do this. We hope you won't come to the federal courts or even the EEOC with every little complaint that you might have. We hope you will use alternative dispute resolution. No panel of any appellate court except the Duffield panel has ever held that Section 118 either authorizes or prohibits anything. The other panels that have looked at it after Duffield and rejecting Duffield, Desiderio, Kovaleski, Rosenberg, and Seuss, have all taken it as a statute that encourages alternative dispute resolution and have all in that context looked at the language, where lawful, as invoking the Federal Arbitration Act and invoking the state of the law under the Federal Arbitration Act at the time Congress passed the statute, in other words, Gilmer. The second place that Duffield goes wrong is that it takes a statute that was passed in November of 1991 and it uses House reports that were issued one before Gilmer and the other four days after Gilmer, and it says that those reports froze in time the debatable state of the law that existed before Gilmer that, according to one part of one of the House reports, meant that Title VII claims could not be arbitrated. It's worth remembering in this context that the United States Supreme Court took Gilmer on certiorari while this bill was being considered and did so because there was a circuit conflict. And footnote one of Gilmer cites a Third Circuit case which is involved in that conflict. I start with, in looking at legislative history like that, if the United States Supreme Court is taking a case on the ground that there is a circuit conflict, it is not a responsible thing to say that Congress understood the law to be settled in one direction of that conflict at the time it passed the statute. The legislative history analysis in Duffield is too ambiguous to carry the weight that the opinion tries to give it. For example, House Report 10240-1 and-2 as well, the ones on which Duffield principally relies, refers to enforcement provisions of Title VII. I understand in the argot of labor law, enforcement provisions normally refers to the provisions that provide for the EEOC to take a complaint, to investigate, and so on. And the word civil action normally applies to civil actions. It's simply not clear from those reports that they absolutely had to refer to civil actions in court. The rejection of a Republican substitute amendment needs to be taken first in the light of a report to say why Congress rejected it. Well, we know why the authors of the report say Congress rejected it, but it's equally possible that the other members of the legislature, both houses, saw that under the FAA, there was no need to have an amendment that specifically authorized arbitration agreements. The FAA already did that. So the legislative history analysis, while interesting and reviewed by a number of other courts and rejected by those courts, simply doesn't carry the weight that Duffield asked it to. Duffield ignored the fact that Congress must be deemed to understand the law in force at the time it passes a statute. And this is not just a technical point with Duffield, because the floor debates, and these are cited in the briefs. I won't try to give congressional record citations. They're in the briefs for people to look at. In the floor debates, both on the House side and on the Senate side, there was reference specifically to Gilmer. If Congress, knowing Mitsubishi v. Solar Chrysler Plymouth, knowing that the courts will say arbitration is a fine way to enforce a federal statute unless Congress has said otherwise, if Congress, knowing those things, wanted to say after Section 118 you cannot have condition of employment arbitration agreements, it knew what it had to do. It had to say so in plain language. It didn't. It knew the structure ever since Mitsubishi. It knew Gilmer. It heard Gilmer discussed on the floor before passage. And it left entirely alone a statute that says nothing more than, nor less, than seven kinds of alternative dispute resolution are enforced. Yes, Your Honor. It heard it discussed on the floor, and the chairman of the committee, subcommittee on civil and constitutional rights, told the House just before passage that the section contemplated the use of voluntary arbitration and that no approval of whatever was intended to incorporate in the bill Gilmer or any application of Gilmer to Title VII. So that's right. They did discuss Gilmer. And they said they knew what they were doing. Now, maybe that should have been put in the legislation. And you say that the fact that they knew it and understood and thought they were doing something else isn't controlling, right? Your Honor, I think it had to be put in the legislation, because the illustration you cite, even if someone was the chair of a committee, is simply a statement on the floor that is simply at odds with other statements on the floor. Well, but weren't we told to look carefully at the legislative history? I know there's a debate about how important legislative history was. But didn't the Court say that in doing, examining this type of statute and this question specifically, that we were supposed to look not only at the Act but at the legislative history? Your Honor, I don't read in Mitsubishi or Gilmer or any of the later cases that we've discussed today any direction that says that the lower federal courts should look at legislative history when a statute on the subject of arbitration is clear on its face. Did you almost say to scrupulously examine the Act and the legislative history? It did, but it didn't say that that overrules the general principle that if the statute is clear on its face, the Court is bound by the statute as written. And this statute is clear on its face, and the examination of the legislative history does not clearly and unambiguously show, as it is supposed to if Congress is sending a message that there's no arbitration, that arbitration is inappropriate for this kind of claim. I was going to conclude with this. What's clear on the face? What language are you referring to? The encouraged? The word encouraged is clear on its face. The fact that the statute neither authorizes nor prohibits anything is clear on its face. I recognize Duffield spent a lot of time with the issue of where appropriate. Where appropriate makes a lot of sense when one doesn't use ellipsis on alternative dispute resolution including and the six kinds of alternative dispute resolution that precede arbitration, because in any particular circumstance where Congress is encouraging the use of ADR, any one or more of those tools may be appropriate or inappropriate. For example, it would be absurdly inappropriate to have a mini-trial where there's an arbitration agreement. It would be a complete waste of time and money. So I... You have about two minutes left. Thank you. If there are no further questions, I would reserve my remaining time for rebuttal. He's pretty good, huh? Good afternoon. May it please the Court. I'm Dori Bernstein. I represent the EEOC. Donald Lagutry lost his job because he refused to waive his statutory right to take a discrimination claims to court. The question in this case is whether an employer may lawfully discriminate against an applicant or employee who insists on retaining a claim. The EEOC's position is that the federal anti-retaliation provisions prohibit discrimination against an individual who refuses to waive his right to participate in statutory proceedings. The refusal to employ someone because he objects to a compulsory waiver of statutory rights is unlawful retaliation. Would the EEOC concede that if we determine that there is no substantive right to arbitration and that the Supreme Court meant what it said when all that deals with is a choice of fora, that you lose on the retaliation argument? No. Why not? Because those cases holding that an agreement to arbitrate, which is signed by an employee, is enforceable in certain circumstances, and clearly the court in Gilmer held that an agreement that Mr. Gilmer signed to arbitrate his discrimination claim, which was signed as a condition of his employment, was enforceable. But how is it retaliation if there is no pending proceeding at the time the employee is asked to sign that agreement when he applies? Because, Your Honor, for several reasons. First, the ADA has a provision which makes it unlawful to threaten, interfere, or coerce an individual in the enjoyment or exercise of any statutory right, any means all. But don't we have to find that statutory right to be substantive? No, Your Honor, because the first of all, the statutory language doesn't say any substantive right. It says any procedural right. Those cases like Gilmer, in Gilmer what the Supreme Court did was it said, look, we don't see anything in the Age Discrimination Act that makes, that shows that Congress intended these kinds of claims not to be subject to arbitration if somebody agrees to it. Gilmer said, well, but there's unequal bargaining power between me and my employer, and I signed this because I needed to to get the job. And the Supreme Court said, look, we have here an experienced businessman who signed an agreement, and the mere fact, and once you sign an arbitration agreement, if those statutory rights are arbitrable, which in Gilmer they held they were, once you sign an arbitration agreement, once you sign that agreement, the policies of the FAA say you're going to enforce that agreement to the extent you would any other contract. So then you're going to be able to do that. So it can't be retaliation, can it? No, that's incorrect, Your Honor, because you have a different situation when you have somebody who says no, who says, no, I do not want to give up my statutory right, even though I can waive it. We're not arguing that a person may not waive these rights. Yes, a person may waive these rights. The question is, is whether they can be punished for refusing to waive those rights. What do you think we should do with Duffield? In this case, we haven't taken a position on the substance of Duffield. We do not believe that the Supreme Court in Circuit City overturned Duffield. I'm sorry, you say you do or don't? What do you say in this case? You do or do not? We do not believe that the Supreme Court in Circuit City overturned Duffield. We did file a brief in Duffield that urged the court to take precisely the position that it took in that case. The reason why we didn't address the question in Duffield in this case is because this case does not present the question that was answered in Duffield, which was, is a signed agreement to arbitrate statutory discrimination claims enforceable? If we reverse Duffield and say that an employer can require, as a condition of employment, an arbitration agreement, okay? If that's what we hold. I don't think that that's the holding of Duffield. The holding of Duffield is an arbitration agreement that is signed as a condition of employment is not enforceable because the question in that case was not, does it violate any provision in Title VII or any of the discrimination laws to fire someone who doesn't sign this? It wasn't even does it violate any of these provisions to require someone to sign it as a condition of employment. The only question in Duffield was, can this woman, Tanya Duffield, who signed this agreement without objection, take her discrimination claims to court? And this court held no, not as to these claims, because Congress didn't intend an agreement obtained in this manner to be enforceable. She didn't come to court saying they violated my rights by making me sign this. She came to court saying I was subjected to sex discrimination and harassment and I'd like to go to court. And the question for this court, like the question for the court in Gilmer and in Circuit City and in every other court that's addressed this except for the 11th Circuit in weeks, and I'll get to that, was, is a signed agreement enforceable? And that depends on whether or not, first, those particular claims are arbitrable, and second, whether that individual agreed. And once you're talking about a signed agreement and you're applying the FAA general contract principles, if somebody signs something and they're of sound mind, et cetera, et cetera, you assume that they agreed and they will be held to that agreement. Under your view ñ Can I stop you? Oh, go ahead. If I'm an employer and I want to hire somebody today, someone comes in to me today and I say, I want you to sign an agreement to arbitrate and if you don't do it, you don't get the job. Can I do that under your view? No, because ñ Doesn't your narrow reading of Duffield suggest that what Judge Silverman posed isn't an unlawful practice or wouldn't be retaliation? Because they're not prohibited from requiring the agreement. They're prohibited from enforcing the agreement later. It's not unlawful because of Duffield. It is unlawful because the anti-retaliation provisions, which the Supreme Court in Robinson v. Shell Oil unanimously recognized, are primarily intended to maintain unfettered access to statutory remedial mechanisms. That's the primary purpose of these laws. And there is a provision in the ADA which says, thou shalt not interfere in the exercise or enjoyment of any statutory right. But Mr. Legacy wasn't trying to get access to the court. He was talking about what might happen years later. You've projected that back to suggest that signing the agreement for a hypothetical future lawsuit would be improper, and yet reading Duffield as you do, you suggest a distinction between the two. Is this case premature? Retaliation wouldn't occur under that theory until he actually said, okay, I've got a claim, now I want to go to court, and then the law firm tried to enforce the agreement. No, this case isn't premature because he was fired from this job. He lost his job because he opposed a compulsory waiver of statutory rights. And in the commission's view, a compulsory waiver is contrary to the plain language of ADA Section 503B, conflicts with the primary purpose of the anti-retaliation provisions, which is maintaining unfettered access. If you agree, if you voluntarily agree, if you sign on the line, then you have given up your right. It's a waivable right. The question is, the question is, can an employer require you to waive that right in order to get a job? And just because a signed agreement is enforceable does not vitiate any protections that the anti-retaliation provisions afford somebody who wishes to retain those rights. But if the signed agreement is not enforceable, which is the point of Duffield. If the signed agreement is not enforceable, then it's an even stronger argument for why it is retaliation. Because let's say I walk into a job and the employer says to me, if you want to work here, you have to agree to put up with sexual harassment and you have to give up your statutory right to be free of sexual harassment. And I say, you know, I really don't feel comfortable with that. I don't want to sign that. And the employer says, well, sorry, we're not going to hire you. That has to violate the anti-retaliation provisions. And the reason is because that would be a real handy way for an employer to screen out any person who is likely to assert her rights or to get people to sign to take the job and who then won't go to court and enforce those rights because they think they're bound by an unenforceable agreement. So clearly, if the agreement is unenforceable, it is directly contrary to the whole point of the retaliation provisions, which is we don't want to deter people from exercising their statutory rights. Is it that or is it that it is unenforceable because it is void as against public policy, that we simply will not allow an employer to make that an enforceable condition under any circumstances, whereas with mandatory arbitration, the Supreme Court has said that it is not against public policy to require that claims be arbitrated rather than tried to adjourn. The Supreme Court has also said repeatedly and most recently in EEOC v. Waffle House that arbitration is a matter of consent and not coercion, which means that anyone who does not agree to arbitrate cannot be compelled to give up his statutory procedural rights. Our view is that when Congress gave people the right to go to court and not only gave them the right to go to court, but gave them substantive protection for exercising their right to go to court, and when this court interpreted that substantive protection, not just limited to the person who actually goes into court, but somebody who tells his employer, I am going to go to court, that a person can at least reasonably believe, reasonably believe that it is unlawful for an employer to say to you, you know, I am not going to hire you unless you promise not to go to court. Suppose you have a collective bargaining agreement where the union has negotiated for arbitration, but an individual union member disagrees with the prohibition and insists that they be allowed to try their case rather than arbitrate it. Would your answer be different? This court has held, and other courts that have held, that have addressed the question have held, if I understood your question properly, that a union cannot waive an individual's felt. The only circuit court that has held to the country is the Fourth Circuit. And the Supreme Court in Wright said, unless you have a clear and unambiguous waiver, you can forget about enforcement, and we're not going to address whether or not even a clear and unambiguous waiver. We think that at least it has to be clear and unambiguous. And this court, before Wright, held that you couldn't even waive it in a collective bargaining agreement because that's what the Supreme Court said in Alexander v. Gardner, Denver. And the Supreme Court in Wright just said, at the very least it's got to be clear and unambiguous, and we're not going to answer whether, if it were, it would be enforceable, because in that case they said it clearly wasn't. I understand the question of your argument, obviously. Can you help me fit the argument into the actual text of the retaliation or the interference provisions of the statute? Certainly, Your Honor. In the ADA, Section 503b, which is our clearest textual argument, says, and I'm going to quote, it makes it, quote, unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed any right granted or protected by this chapter. So your argument under that, then, is that a take-it-or-leave-it condition of employment provision that says either you agree to arbitration or you can. Yes. Is coercion interfering with the exercise of the right to go to court? Yes, Your Honor, because clearly a compulsory waiver of statutory rights where an employer says you sign it or you're out the door has both the purpose and effect of interfering with that individual's ability to take discrimination claims to court, which is a right granted by the judge. I understand that textual. Well, how about the text that helps you get past, that helps you with the retaliation argument? I think that may be harder in the text. You mean in the other? Well, okay. You're making a coercion argument under B. You've also made a retaliation argument under A. If this is unlawful to compel somebody to waive his statutory right in order to get a job, then when somebody refuses and says, I won't sign that, he is opposing a practice made unlawful by Section B. If I violated B, then you've got retaliation as soon as he goes? If somebody says no and gets fired for it. Okay. I got it. Now, under the other anti-retaliation provisions don't contain that kind of explicit prohibition of interference. But we think that the Supreme Court statement in Robinson that the primary purpose of these provisions is to maintain unfettered access to statutory procedural mechanisms demonstrates that a compulsory waiver of the statutory right to go to court is in conflict with the primary purpose of these provisions. Can you tell me that this issue is being litigated in any other circuits? The only other circuit that has already decided it is the Eleventh Circuit in Weeks v. Hardin. To my knowledge, I don't know of any other court where this is being raised. In Weeks v. Hardin, however, the court did not consider any of these arguments. It didn't consider 503Ba argument. It never even cites to Robinson v. Shell Oil. It doesn't consider the precedent that would construe participation conduct to include informing your employer of your plans to sue them. The only basis for that court's decision was this court's decision in Duffield. What the plaintiffs there argued was we thought because of Duffield that this was unlawful. And the Eleventh Circuit said, well, nobody else agrees with Duffield, so that's not a basis. Well, that is not in any way an argument that we have made. We are not resting our retaliation on Duffield. I see that my time is overdone, and I do want to give my Mr. Pilevsky a chance. But the EEOC is not on that case. No, Your Honor. I'm sorry. I need to ask one more question. Sure. To what deference does this court owe to the EEOC under Chevron or any other case? In general, what courts have held is that basically you don't owe any deference to our litigation positions. That's my understanding. Our policy guidance is basically under Skidmore. You give them whatever deference to the extent you agree with them. And the only thing that gets Chevron deference is when we have a rule promulgated pursuant to all the notice and common procedures of the FAA, of the EPA. Thank you. I'm sorry to eat into the next time. May it please the Court, Cliff Pilevsky appearing on behalf of intervener Donald Lagutry. Please allow me to respond to certain of your questions. The Supreme Court has never said you may require an arbitration clause as a condition of employment. It used the phrase mandatory, as Duffield explained, to mean once you sign, having made the bargain, we will enforce it. They made a specific point in Gilmer of saying that Mr. Gilmer did not contend that he was coerced. And throughout the jurisprudence of the Supreme Court, they say consent, not coercion, consent, not coercion, for a very good reason. There are three separate public policies involved here. The first is the Constitution, the First Amendment, the Fifth Amendment, the Seventh Amendment. The second public policy is the civil rights laws. The civil rights laws were passed with the specific purpose of providing access to a federal court to allow a federal judge to enforce and interpret the law. And the third is if someone signs an agreement, the FAA. There is only one way that you can reconcile all three of these public policies, and that is if you require a knowing and voluntary agreement. If you do that, there is no conflict between these policies. If you permit constitutional rights to be waived coercively or involuntarily, you are offending a far greater public policy than the FAA. If you permit the party being regulated by the civil rights laws to condition a waiver of the procedures and rights provided under that law, you are permitting the essential repeal of the civil rights laws. Well, how does that square with the language of the Supreme Court that what we're really talking about here is not denying someone the right to bring a claim for discrimination? What we are doing is establishing the forum in which that right will be vindicated. And we've got amici who are arguing that, at least in the securities industry, it appears that the arbitrations are actually more beneficial to plaintiffs than court decisions. Let me answer both those questions. First, what the Supreme Court said is that we will allow you to arbitrate because by agreeing to arbitrate, you are not waiving the substantive provisions. However, once the arbitrator makes a mistake and you lose the right to have that mistake corrected, you have lost the substantive right. Arbitration is not a separate but equal forum. The Supreme Court hasn't said that. The Supreme Court has certainly said it. Just last term when they approved the appellate review standard in the FAA is a matter of statute. Errors of fact or law on the face of the award are not grounds for appeal. So even an incorrect legal ruling cannot be appealed. Therefore, you lose that substantive right. More importantly, aside from losing the substantive rights under the statute, you are losing constitutional rights. We can't forget that the right to access a petition of court, the right to access a petition of court. But, counsel, we allow in the criminal arena substantive criminal rights to be waived all the time, for example, in guilty pleas. And one could argue that it is coercive to have to give up the right to appeal in order to enter a guilty plea or the right to contest pretrial evidentiary rulings. You're telling me you're exactly right. You can waive those rights. Take a look at the standard for the waiver of your rights to trial and appeal. Before you will accept a guilty plea, you must advise the defendant of each of the rights they are waiving. They must make an affirmative, voluntary statement on the record. If you apply that same standard for waiver to an arbitration agreement, you could not ever say that in this situation you lose this job. Mr. Lagutry, you lose your insurance. It's voluntary. You cannot have it all the time in criminal cases. You lose the right to appeal if you enter this plea of guilty. The decision to enter the plea of guilty is with the defendant. He can say yes or he can say no. If you just apply that same standard for the waiver of constitutional rights to the constitutional rights being waived in arbitration, Duffield is obviously correct. Can I move you out of the criminal arena just for a second? If you don't mind. And I want to go back and also add a Duffield temporarily and back to the retaliation issue. The question I have there is the argument made by Luce Forward is that Mr. Lagutry did not have a viable subjective belief that his position would be one that would require him to do something that was illegal, in other words, agree to this illegal agreement. What in the record, in your view, is there that would support a subjective belief argument with respect to retaliation? Mr. Lagutry expressed that he wanted to retain the right to go to court and to a jury, which is a right provided specifically in the statute. The anti-retaliation provision, the interference clause, 12203B, says you may not interfere in the exercise and enjoyment of any right. It doesn't say any substantive right. It says any right. And when you look at Mr. Lagutry, who was HIV positive, who desired to have this court or the Supreme Court decide whether HIV was a disability as opposed to an arbitrator, no one can say that there is no material difference. The right to go to court is the right that Mr. Lagutry refused to waive. That is the right that is required. But that was a right that was in his head. I mean, he never told that to Luce Forward. The right to go to court. I understand that. Well, certainly. But whether he's HIV positive or not, he didn't tell that to Luce Forward. He didn't, but he doesn't really matter. I mean, let me ask you on the issue of consent or coercion, why that cannot be resolved on an individual basis rather than, as you appear to be arguing, you want us to say as a blanket basis, you can't, no employer ever can ask, seriously ask, a prospective employee to sign an arbitration agreement. I absolutely am not saying you can't ask. I think it's a good idea to ask. No, or you can't insist. You can't say, look, it's my policy to arbitrate. I believe in mediation. I believe in arbitration. I do not believe in expense or whatever of a court system. Let me tell you why. Several reasons. First, the law was passed to regulate employers. The rights belong to the plaintiff. The employment relationship is different. We know we can enforce those agreements. So I'm not talking we know they can be enforced. My question is why can't you get at the lack of consent, if you think there is, or the lack of voluntariness or intelligence or knowingness or however you want to phrase it on an individual basis like you do in a guilty plea situation. In most situations you can, but when you're talking about a protected relationship, conditioning entering into the relationship on waiving your rights is a bright line. It is very different than saying if I pay you $10, would you waive your clause. That's a different equation than saying I will not allow you to enter into the relationship that Congress saw desperately necessary to protect. It's so important to distinguish the employment relationship from a routine commercial relationship. The Norris-LaGuardia Act makes it clear that it is the public policy of this country to recognize that individual workers do not have the ability to freely negotiate terms of labor. As Judge Pregerson pointed out in the panel decision, when the FAA was being discussed, there was concern that Esau would sign, Esau signed away his birthright because of the compulsion. The free market analysis has never or not since the 13th Amendment been applied to the workplace. Discrimination laws, wage and hour laws, OSHA laws have been passed because they are so necessary. Because that concept, if you want this job, trade away your rights, has failed. And we have to recognize that the bright line of conditioning the entrance into the protected relationship is the right bright line. What should happen is you should give someone a choice. If, in fact, arbitration was as good as that amicus brief, which I didn't know was accepted, says it is, there would be no need for compulsory arbitration. You would find employees asking for arbitration. I suggest to you that in the articles that we cited in our brief, you will see statistics that are very significantly different. ADR is a good thing. It is in the best interest of the institution of arbitration to make sure it is knowing and voluntary. It is an adversary process. If you take an adversary process and give it to one side and say make the rules, choose the arbitrators, it is an invitation to abuse. You know better than I how much time you are spending striking down clauses because of statutes of limitations. And in this case, this was not a naked arbitration agreement. This agreement shortened the statute of limitations. But look at the abuses that occur only because we allow one party to set the rules, limits on discovery, limits on remedies in circuit city, shortening of statute of limitations, unilateral selection of the arbitrator. There are endless permutations. That is why the National Academy of Arbitrators and the Society of Professionals in Dispute Resolution have taken the extraordinary position of opposing mandatory arbitration. Everyone who loves and cherishes the institution of arbitration and wants ADR to succeed knows that that can only happen if it is knowing and voluntary and the parties themselves are responsible for ensuring fairness and not the courts. There is a very big difference between the arbitration of a contract case where the only rights we're arbitrating come from the contract and arbitrating statutory claims. Mr. Lagutry got those rights from the legislature. The normal employment bargain is I will work for you and you get paid. Not you must surrender your constitutional rights to get a job. It was not Loose Forward's right to insist on whether it be self-deregulation or the forfeiture of statutory rights as a condition. It's a very different analysis. And discrimination claims are particularly important because there's a special need for discovery. We can't contact present employees. We're trying to prove state of mind. We're trying to disprove pretext. There are so many unresolved questions of law that it is so important to have a judge or someone schooled in the law to make that decision and to be able to appeal it. And these considerations are not across the board. It's very different in a contract case or a construction case where you're submitting issues of fact. Discrimination cases are statistically due very poorly in arbitration because the limit limitations in arbitration which give it the efficiencies make it especially difficult to prosecute discrimination claims. And the statistics back that up. Aside from the legislature, let me say a few things about the legislative history. I'll do it quickly. Section 118, whether it was before Gilmer, after Gilmer, is really a red herring because the ADA has the exact same language and that language was written with the same essential legislative history before Gilmer. So we know what Congress intended and we have the same words in both statutes. Public policy is the key to this question. That the FAA and the Supreme Court permit you to refuse to enforce a contract if it violates public policy. Whatever the public policy is in the statute is undermined by a compulsory waiver. Your time has expired. Thank you very much. Thank you, Your Honor. I will be brief. Counsel, may I ask you one question about the answer your opponent gave us? Someone asked about deference to the EEOC. She said we should defer if we agree. Didn't Chazabal change the standard of deference and say that even where the statutes seem to say the opposite, we should follow the EEOC and defer to it? Your Honor, I haven't reviewed the issue of deference at all in this circumstance because of the EEOC's repeated admissions that are in my Rule 28J letter. As far as I'm concerned, their 1997 policy statement is repudiated. They did that to the U.S. Supreme Court and they did that in court. And that policy statement in any event says nothing at the end, after a lot of language, it says nothing more than that the EEOC will continue to accept charges notwithstanding an arbitration agreement. Well, that's great. That's what the U.S. Supreme Court said is fine in Waffle House, and it will continue to file amicus briefs about particular arbitration agreements. So that policy statement really has no particular value and the EEOC has no position in saying that anyone could rely on that to think that he or she had a reasonable or actual belief in refusing to sign an arbitration agreement. Can I ask you to respond to the reading given by the EEOC of the statute when I said, now, what statutory language do you have? And they came up with a different answer or a different approach than the one you had sort of repudiated or responded when you answered my question. And they said, well, the unlawful practice is the coercion under subsection B and then the retaliation is firing for resisting the coercion. Yes, Your Honor. That's their theory. That's their theory and I think among other things. That's a different theory than you were responding to when you responded to me before. Yes, Your Honor. And I think first our position should be clear that retaliation stands or falls with Duffield. What we have here is an employment applicant. The only employer act is to carry out its announced and universal policy not to hire somebody if they won't sign the agreement. That policy stands or falls on its merits. You are not coercing or intimidating anyone. Or interfering. Or interfering. With the exercise of any right under the statute. No, you are not interfering with any such right when the United States Supreme Court Including the right of filing suit. Including the right of filing suit. When the United States Supreme Court says that arbitration is nothing but a change of forum, that means for the EEOC's argument here, the U.S. Supreme Court has said that arbitration and going to court are absolutely equally meritorious ways to resolve private civil disputes under anti-discrimination law. They said that in cases, only in cases after the contract has already been signed. And then the question is whether the provisions of the contract are enforceable once the contract has been signed. I agree that those are the facts of those cases. But when the United States Supreme Court says that arbitration and filing a civil lawsuit are on absolutely equal footing. They didn't quite say that. Equal footing absolutely goes too far. You may finish your sentence. Thank you. What I would conclude with, Your Honor, is employers condition employment on lots of things. Employees who agree to arbitration knowingly and voluntarily do so. That is already the law of the circuit underlied.
judges: Schroeder, Pregerson, Reinhardt, Rymer, Tashima, Silverman, Graber, McKeown, W. Fletcher, Tallman, Clifton